# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### WESTERN DIVISION

**F I L E D**

APR 0 6 2010

MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

UNITED STATES OF AMERICA

v.

MARCO CAMPOS
JESUS MACIAS
MIGUEL RIVERA
(Name and Address of Defendant)

CRIMINAL COMPLAINT

CASE NUMBER: 10 CR 5 00 24

I, DOUGLAS L. HOPKINS, the undersigned complainant being duly sworn, state the following is true and correct to the best of my knowledge and belief. On or about April 5, 2010, at Rockford, in the Northern District of Illinois, Western Division, defendants Marco Campos, Jesus Macias, and Miguel Rivera did conspire with each other knowingly and intentionally to possess with intent to distribute and to distribute a controlled substance, namely 500 or more grams of a mixture containing cocaine, a Schedule II Narcotic Drug Controlled Substance, in violation of Title 21, United States Code, Sections 841(a)(1) and 846.

I further state that I am a Special Agent with the U.S. Drug Enforcement Administration and that this complaint is based on the facts in the attached affidavit.

Continued on the attached sheet and made a part hereof: _x_ Yes __ No

_____
Signature of Complainant

Sworn to before me and subscribed in my presence,

April 6, 2010                                    at Rockford, Illinois
Date                                                City and State

P. MICHAEL MAHONEY, U.S. Magistrate Judge        _____
Name & Title of Judicial Officer                    Signature of Judicial Officer

NORTHERN DISTRICT OF ILLINOIS    )
                                 ) ss.
WESTERN DIVISION                 )

## AFFIDAVIT IN SUPPORT OF COMPLAINT

I, DOUGLAS L. HOPKINS, being first duly sworn upon oath, depose and state:

1.      I am a Special Agent of the U.S. Drug Enforcement Administration ("DEA") and have been so employed for approximately the last 21 years. As a DEA Special Agent, my duties include investigating violations of federal drug laws. While a DEA Special Agent, I have been involved in numerous investigations of drug trafficking, and have worked closely with other DEA agents, as well as with both state and local police agencies in investigating drug trafficking activities. I have also received training in drug enforcement from the DEA.

2.      I have been assigned to assist in the investigation into the distribution of cocaine, a Schedule II Narcotic Drug Controlled Substance, by Marco Campos and others. Other DEA special agents and local law enforcement officers have participated in this investigation. I have discussed the results of their investigation into this matter with other agents and officers. This affidavit is based in part upon those discussions and in part upon my own investigation and observations. This affidavit contains information necessary to prove probable cause to support a criminal complaint. Therefore, it does not and is not intended to include each and every fact and matter known to me.

3.      On April 4, 2010, a cooperating individual (hereinafter referred to as "CI") received a telephone call from Marco Campos. During that call, Campos indicated that a shipment of cocaine had come in and that the CI should be ready the following day or

evening. The CI reported the call from Campos to a law enforcement officer on the morning of April 5, 2010. On the afternoon of April 5, 2010, Campos called the CI. The CI indicated that he would call Campos back. The CI then met with me and other law enforcement agents. The CI then made a recorded telephone call to Campos. During that call, the CI and Campos agreed to meet at Campos' residence located on Miriam Avenue in Rockford. Task Force Officer ("TFO") Scott Bowers placed a recording device and a transmitter on the CI.

4.   Agents were stationed near Campos' residence on Miriam Avenue. Agents observed Campos arrive at his residence. Thereafter, agents observed the CI drive up to Campos' house and park in the driveway. The agents watched at the CI and Campos had a brief conversation in the driveway. The CI and Campos then both left in separate vehicles. The CI called a law enforcement officer and stated that the CI was following Campos to Ninth Street in Rockford. The CI had previously pointed out a house located on the 2800 block of Ninth Street as the residence of a supplier of cocaine to Campos and identified a photograph of Miguel Rivera as the supplier. Surveillance agents followed the CI and Campos to Rivera's house on Ninth Street.

5.   At Rivera's house on Ninth Street, Campos and the CI went inside the house. Campos and another male inside the house had a conversation in Spanish. Either Campos or the other male advised the CI that it was 5 minutes away. Agents observed a small silver-colored car being driven by a male, later identified as Jesus Macias, arrive at Rivera's house and park in the driveway. Macias then went inside the house. The CI had a conversation

with men inside the house concerning the cocaine and money. After approximately two minutes, Macias came outside and opened the trunk to the silver-colored car. Macias then went back inside the house carrying a toolbox. Once inside the house, Macias opened the toolbox and there was a Doritos bag containing a kilogram of cocaine wrapped in cellophane. Macias showed the cocaine to the CI and the CI cut into the package. The CI put $5,000 in currency on the kitchen table and went outside, purportedly to get the rest of the money. The CI then called a law enforcement officer and indicated that the cocaine was in the house.

6. Law enforcement officers went to the residence and secured it. Inside the house were Campos, Macias, and Rivera. Rivera gave written consent for the agents to search his residence. Inside the house, agents found the Doritos bag containing the kilogram of cocaine on the kitchen counter and the $5,000 in the vanity under the sink in the bathroom. Macias was also found in the bathroom. Campos was found in the closet in the bedroom. Inside that closet, agents found a cased shotgun. Rivera was found in the living room.

7. All three individuals were advised of their *Miranda* rights in Spanish. Rivera agreed to be interviewed. Rivera identified himself as Francisco Mucharras. In the bedroom, agents found fictitious identification documents for Rivera in different names. Rivera said he has known Macias for 4 or 5 years. Rivera said he gets paid $150 for letting Campos and Macias use his house and that he had done this only one time before. Rivera said Campos had previously stated that he was looking for a kilogram of cocaine and that Rivera had contacted Macias. According to Rivera, Macias said he had the cocaine.

3

8. On April 5, 2010, the white powder was field-tested by TFO Bowers, a law enforcement officer, and the results of the test were positive for the presence of cocaine. The baggie containing the cocaine was weighed by TFO Scott Bowers and found to weigh a total of 1,013 grams.

9. Based upon the foregoing, there is probable to believe that on April 5, 2010, Marco Campos, Jesus Macias, and Miguel Rivera did conspire with each knowingly and intentionally to possess with intent to distribute and to distribute a controlled substance, namely 500 or more grams of a mixture containing cocaine, a Schedule II Narcotic Drug Controlled Substance, in violation of Title 21, United States Code, Sections 841(a)(1) and 846.

_____
DOUGLAS L. HOPKINS
Special Agent
U.S. Drug Enforcement Administration

SUBSCRIBED AND SWORN TO before me on April 6, 2010.

_____
P. MICHAEL MAHONEY
United States Magistrate Judge

4